UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| PAUL F. KENNY<br>FAYE A. KENNY | :<br>: | Case No: 09-27220<br>Chapter 13 |
| Debtors | : | |
| BRANCH BANKING & TRUST CO. | : | |
| Movant | : | |
| vs. | : | |
| PAUL F. KENNY<br>FAYE A. KENNY | :<br>: | |
| Respondents | : | |

**MEMORANDUM OF LAW IN SUPPORT OF BRANCH BANKING & TRUST COMPANY'S OBJECTION TO CONFIRMATION OF AMENDED CHAPTER 13 PLAN**

Unsecured Creditor, Branch Banking & Trust Co. ("BB&T"), by and through its attorneys, Jeffrey W. Bernstein, and Goozman, Bernstein & Markuski, in support of its objection to Confirmation of the Debtors' Amended Chapter 13 Plan, states as follows:

## I. QUESTIONS PRESENTED:

Is an above-median-income Chapter 13 Debtor under 11 U.S.C. §1325(b)(1) required to pay into the Plan all his projected disposable income for the applicable commitment period even though the Debtor has also funded the Plan with an initial sum of $50,000.00, and the total plan payments will exceed the minimum distribution requirement under the "best interest" test of 11 U.S.C. §1325(a)(4)?

## II. PROCEDURAL BACKGROUND:

1. **September 14, 2009 (Docket 1)**: Debtors, Paul F. Kenny and Faye A. Kenny, filed for Chapter 13 protection.

2. **September 14, 2009 (Docket 1)**: Schedule J listed the following monthly secured expenditures:

   a. GEMB Lending ("GEMB"): 5th Wheel Trailer: $324.00

   b. Second Mortgage (BB&T): $550.45

3. **September 14, 2009 (Docket 1)**: Debtors' original Schedule B did not list any "Accounts Receivable" (Item 16).

4. **October 7, 2000 (Docket 15)**: Debtors' Amended Schedule B adding to Item 16, Accounts Receivable: "V.M. Cimino Contractors – repayment of personal loan - $50,000.00") (V. Cimino is listed as Debtors' former partner in Statement of Affairs (Item 22.))

5. **September 14, 2009 (Docket 2)**: Debtors file Chapter 13 Plan, which in part provided as follows:

   a. $1325.00 per month for 60 months

   b. BB&T Second Mortgage: Paid Outside of Plan

   c. GEMB Lending: Paid Outside of Plan

6. **December 4, 2009 (Docket 22)**: Order Denying Confirmation with leave to amend.

7. **December 14, 2009**: Debtors file amended Chapter 13 Plan (Docket 23) which in part provided as follows:

   a. $1325.00 per month – 60 months

   b. $49.900.00 lump sum payment

   c. GEMB Lending: Surrender

   d. BB&T 2nd Mortgage – Avoid Lien

8. **January 15, 2010 (Docket 27)**: Court enters order avoiding BB&T's Second Mortgage Lien on the Debtors' residence.

9. **January 29, 2010 (Docket 30)**: BB&T files Objection to Confirmation of Plan on the basis that the Debtors were not paying all of their projected disposable income into the plan for the applicable commitment period.

## III. ARGUMENT:

The Debtors' Schedule J filed in this case computes their monthly net income as $1,335.63 per month, however, since the filing of the schedules the Debtors are no longer obligated to pay the monthly secured loans to BB&T in the amount of $550.45 and to GEMB in the amount of $324.09. Similarly, the Debtors' Form B22C computes their disposable current monthly income at $1,307.47 and which also includes deductions for the payments of the two loans which are now unsecured.

11 U.S.C. §1325 in pertinent part provides as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if:
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.
>
> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

A Chapter 13 plan cannot be confirmed by the Court unless it comports with all of the requirements set forth in Section 1325(a), including the "best interest test" of Section 1325(a)(4). The best interest test mandates that the plan, as of its effective date, proposes paying unsecured claims "not less" than the amount that would have been paid if the estate were liquidated under Chapter 7. The best interest test has typically defined as the minimum payment required to be paid to unsecured creditors. *Norton Bankr. L & S Proc.*, 3ed. §151:11. The Debtors apparently contend that if the total payments made into the plan comply with the best interest test they are not required to pay all their projected disposable income under §1325(b)(1) into the plan for the applicable commitment period. The Plan may have been confirmable by the Court under §1325(a), but for the fact that a creditor has objected to confirmation. A Bankruptcy Court may confirm a plan if the requirements of 11 U.S.C. §1325(a) are all satisfied, but cannot confirm upon objection to the plan by the trustee or an unsecured creditor if the plan does not also comply with the requirements of Section 1325(b). *In Re: Frederickson*, 545 F.3d 625, 655 (9th Cir, 2008).

Once 11 U.S.C. §1325(b)(1) is triggered, the proposed plan must provide that "all of the debtor's projected disposable income" be paid to the trustee over the applicable commitment period, or that the plan distributes one hundred percent of the unsecured claims. *In Re: Fredrickson*, *Id.* at 655. The Section 1325(b)(1)(B) test is not an alternative test to compliance with the best interest test, but is a separate test mandating compliance upon objection. *In Re: Novak*, 252 B.R. 487 (Bankr. ND., 2000).[1] *See also*, *In Re: Fredrickson*, 545 F.3d 625, 655.

The first issue to be addressed under Section 1325(b)(1)(B) is whether the monthly payments on the now unsecured BB&T and GEMB loans are to be included in computing the Debtors' "projected disposable income." Projected Disposable Income is not defined in the

[1] Case based on Sections 1225(a)(4), b(1)B, but the same rationale would apply to Chapter 13.

Code, and the courts have been divided on the application of the term. Judge Schneider of this Court in *In Re: White*, 409 B.R. 330 (Bankr. D. Md. 2009), conducted an extensive review and analysis of the various positions taken by the Courts on this very issue. *In Re: White*, in pertinent part, addressed the issue of whether the mortgage payments previously due on surrendered properties should be utilized in calculating the Debtor's monthly expenses. In ruling that the amount of the former mortgage payments should not be included in determining projected disposable income, he first noted such expenses were properly included in the Form B22C calculations. However, relying upon *In Re: Watson*, 336 B.R. 523 (Bankr. D. Md, 2007) the Court concluded:

> This Court holds that… monthly payments on surrendered secured property… are not properly deductible in calculating expenses to determine a Chapter 13 debtor's projected disposable income… the disposable income as calculated on Form B22C is only "the presumptive 'projected disposable income' for application of Section 1325(b)(1)(B)." *Watson*, 366 B.R. at 531. Evidence of "a substantial change in circumstance such that the numbers contained in Form B22C are not commensurate with a fair projection of a debtor's budget in the future" will rebut the presumptive correctness of Form B22C. *Id*. "The use of 'projected' to describe 'disposable income' allows this method of determining the deductible expense." *Spurgeon*, 378 B.R. at 202 (citing *In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007)).

Judge Schneider's opinion reflects the majority view which ascribes independent meaning to the word "projected," and views "projected disposable income" as a forward looking term based on the Debtor's income at time of confirmation. *In Re: Reeves*, 405 B.R. 135 (Bankr. D. De., 2009) citing *In Re: Fredrickson*, 545 F.3d 652 (8th Cir. 2008) as the majority view. The holding of *In Re: White* is equally applicable to mortgage payments determined to no longer be secured by the property of the estate. *In Re:* Turner, 374 F.3d 349 (7th Cir. 2009); In *Re:* Thiesen, 406 B.R. 888 (Bankr. E.D. Calif., 2009). Accordingly, the monthly payments

previously payable on the secured BB&T and GEMB loans in the total amount of $874.00 must be added to the Debtors' Projected Disposable Income resulting in $2,209.00 monthly projected disposable income.

The second issue to be addressed under a §1322(b)(B) analysis is the determination of the "applicable commitment period" the Debtor is required to pay his projected disposable income to the Trustee. The circumstances of this case are unusual, and there is no explanation on the record of why confirmation of Debtors' initial Chapter 13 plan was denied with leave to amend. The initial Chapter 13 plan contemplated paying both the BB&T and GEMB secured loans plus $1325.00 per month into the plan, and did not include the $49,900.00 initial lump sum payment. Admittedly, most Chapter 13 Debtors do not have available funds to initially infuse $49,900.00 into a plan, but the payment does not vitiate the mandates of Section 1325(b). The Debtors have asserted that even if the Debtors' projected monthly disposable income is $2209.00 per month, they should be credited with the $49,900.00 payment by proportionately reducing the monthly payments. In essence the Debtors' approach would be the equivalent of reducing the applicable plan commitment period. Assuming the Debtors' Projected Disposable Income is $2209.00 per month, Debtors' proposed plan would have the same result as paying $2209.00 per month for approximately thirty-seven (37) months and then crediting the Debtors with the $49,900.00 against the last twenty-three (23) months of the plan. However, the applicable commitment period is a temporal requirement that must be satisfied, unless the plan provides for payment in full of all allowed unsecured claims. *In Re: Schanuth*, 342 B.R. 601, 606 (Bankr. W.D. Mo. 2006).

The Eighth Circuit, in *In Re: Fredrickson, supra*, after analyzing how a debtor's Projected Disposable Income should be calculated, then turned to the question of the length of

"time the Debtor must make the monthly payments". In conducting its analysis, the Court first assumed the Debtor had complied with all the requirements of §1325(a), *Id*. at FN2, and then examined the language of the statute applying the principles of statutory construction, including examining Congressional intent and the applicability of pre-BAPCPA case law. *Id*. at 659. The Court concluded that "the applicable commitment period" was a temporal requirement, and that Congress intended under Section 1325(b)(1)(B) a plan cannot be confirmed over a trustee's or a creditor's objection unless it extends over the entire sixty (60) month commitment period. This result, the Court explained, comported with Congress' intent to (i) eliminate perceived widespread abuse of the system by curtailing the Bankruptcy Court's discretion and requiring Debtors to pay more to their unsecured creditors. *Id*. at 658, and (ii) that Debtors pay the maximum they can afford for the benefit of unsecured creditors. *Id*. at 59.[2]

The Court, in deciding the case at bar in addition to applying the case law cited above, need look no further than the plain language of the statute in order to deny confirmation. Where a statute's language is plain, the sole function of the Court is to enforce it according to its terms, and the Court must presume that a legislature says in a statute what it means. *Duncan v. Walker*, 533 U.S. 167, 172 (2001), *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). The first sentence of Section 1325(a) provides:

> Except as provided in subsection (b), the Court shall confirm a plan if…

The above quoted language is not ambiguous, and cannot possibly be construed as meaning subsection (b) payments were intended to be the equivalent of the Section 1325(a)(4)

[2] *In Re: Fredrickson* has been cited with approval by members of this Court in *In Re: Wick*, 421 B.R. 206, 213 (Bankr. D. Md., 2010, J. Keir); *In Re: White*, 409 B.R. 330 (Bankr. D. Md., 2009, J. Schneider). Furthermore, in the case of *In Re: Watson* (Bankr. D. Md., 2007, J. Keir), which predated the *In Re: Fredrickson*, this Court adopted the ruling of *In Re: Jass*, 340 B.R. 411, which was subsequently cited with approval by the Eighth Circuit in *In Re: Fredrickson*.

best interest total payments. Such an interpretation would render the words "except as provided in subsection (b)" superfluous, and would be at direct odds with the language of Subsection 1325(b)(1)(A) and 1325(b)(1)(B). The amount of funding required to pay 100% of unsecured claims set forth in Section 1325(b)(1)(A) is not the same as the minimum value of the property to be distributed under the best interest test. Equally compelling is that the projected disposable income payable over the applicable sixty (60) month commitment period under Section 1325(b)(1)(B) will often result in a much greater distribution to unsecured creditors than the minimum distribution required by §1325(a)(4). Furthermore, the words "at least" in §1325(a)(4) cannot possibly be construed to mean a debtor cannot be required to pay a greater sum under §1325(b)(1)(B). Judge J. Federman, in his dissent to the decision of the U.S. Bankruptcy Appellate Panel of the Eighth Circuit in the case of *In Re: Fredrickson v. Coop*, 375 B.R. 829 (2007) concisely explained the relationship between §1325(a)(4) and 1325(b)(1) as follows:

> Even before BAPCPA was enacted, a debtor was required to propose payments to unsecured creditors at least equal to what those creditors would have received from the debtor's assets in a Chapter 7 liquidation. But proposing to pay that amount has never meant that a debtor has fulfilled all his obligations to those unsecured creditors. Instead, it is simply one of the requirements that must be met in order to confirm a plan. I agree with the Trustee that the projected disposable income test, as revised by BAPCPA, was intended to impose another minimum requirement for confirmation. However, in addition to that minimum, Congress was careful to require that additional protections be given to unsecured creditors. *Id*. at 375 B.R. 838.[3]

The Bankruptcy Code §1325(b)(1)(B) explicitly requires the Debtors in this case to pay the total amount of their monthly projected disposable income in the amount of $2209.00 per month for the sixty (60) months of the Plan. Once this Court determines the amount of the Debtors' projected disposable income, the Court has no discretion in reducing the amount or

[3] Judge J. Federman's dissent in great part was followed by the Eighth Circuit Paral in overturning the USBAP's majority decision. *In Re:* Fredrickson, 345 F.3d 652 (2008).

shortening the sixty (60) month payment requirement. The fact that the Debtors have infused $49,900.00 initially into the plan has absolutely no impact on their projected monthly disposable income. Furthermore, §1325(a)(4) is a totally independent minimum confirmation requirement and is not factored into the payments mandated by §1325(b)(1)(B).

IV. **CONCLUSION:**

In sum, for the reasons set forth above, the Debtors' Chapter 13 Plan as proposed should not be confirmed by this Court.

GOOZMAN, BERNSTEIN & MARKUSKI

BY: /s/Jeffrey W. Bernstein
Jeffrey W. Bernstein
Attorneys For Movant
9101 Cherry Lane, Suite 207
Laurel, Maryland 20708
(301) 953-7480
Federal Bar No. 08458

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **2nd day of March, 2010,** copies of Memorandum of Law in Support of Branch Banking & Trust Company's Objection to Confirmation of Amended Chapter 13 Plan was served upon the parties by first class mail or ECF whose names and addresses are listed below:

Paul F. Kenny
Faye A. Kenny
830 Ivydale Avenue
Reisterstown, MD 21136

Jeffrey S. Sirody
Sirody, Freiman & Feldman
1777 Reisterstown Road, Suite 360 E
Baltimore, MD 21208

Gerard R. Vetter, Trustee
100 S. Charles Street, Suite 501, Tower II
Baltimore, MD 21201-2721

_/s/Jeffrey W. Bernstein____
Jeffrey W. Bernstein